IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **REBECCA SHEA,**<br>c/o The Friedmann Firm<br>3740 Ridge Mill Dr.<br>Hilliard, OH 43026<br><br>        Plaintiff,<br><br>vs.<br><br>**SG OF MEDINA LLC**<br>**Dba Serpentini Chevrolet of Medina**<br>15303 Royalton Rd.<br>Strongsville, OH 44136<br><br>        Defendant. | CASE NO. 1:24-cv-73<br><br>JUDGE<br><br>MAGISTRATE JUDGE<br><br>**Jury Demand Endorsed Hereon** |

## COMPLAINT

NOW COMES Plaintiff Rebecca Shea ("Plaintiff") and proffers this Complaint for damages against SG of Medina LLC, dba Serpentini Chevrolet of Medina ("Defendant").

## THE PARTIES

1. Plaintiff is a natural person residing in Medina County, Ohio.

2. Defendant SG of Medina LLC dba Serpentini Chevrolet of Medina is a domestic company registered to do business and is conducting significant business in the Northern District of Ohio.

3. Plaintiff was an employee of Defendant as defined by Title VII of the Civil Rights Act of 1964, U.S.C. § 2000e, *et seq.,* the Americans with Disabilities Act of 1990 as amended, 42

U.S.C. §12101, et seq. ("ADA"), and the Ohio Civil Rights Act, R.C. § 4112, at all relevant times herein.

4. Defendant is an employer as defined by Title VII of the Civil Rights Act of 1964, U.S.C. § 2000e, *et seq*., the Americans with Disabilities Act of 1990 as amended, 42 U.S.C. §12101, et seq. ("ADA"), and the Ohio Civil Rights Act, R.C. § 4112.

## JURISDICTION AND VENUE

5. This action is brought pursuant to Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act of 1990 as amended, 42 U.S.C. §12101, et seq. ("ADA"), and the Ohio Laws of Discrimination. This Court's jurisdiction in this matter is also predicated upon 28 U.S.C. §1367 as this Complaint raises claims pursuant to the laws of Ohio, over which this Court maintains supplemental subject matter jurisdiction.

6. Venue is proper pursuant to 28 U.S.C. §1391, because Plaintiff entered into an employment relationship with Defendant in the Northern District of Ohio, Plaintiff performed her job duties there, and Defendant is doing and has done substantial business in the Northern District of Ohio.

7. Plaintiff has complied with all jurisdictional prerequisites to the filing of this lawsuit and this Complaint is filed within ninety (90) days of Plaintiff's receipt of her Right to Sue letters from the Equal Employment Opportunity Commission, a copy of which is attached hereto as "Exhibit A."

## FACTUAL BACKGROUND

8. Rebecca Shea ("Plaintiff") was hired by Serpentini Chevrolet of Medina ("Defendant") in or around July 2022 as a detailer.

9. Plaintiff was later promoted to lead detailer and worked in that position for the remainder of her employment.

10. Plaintiff had a positive record of employment with Defendant until she disclosed that she had been sexually assaulted by coworker Connor Hastings, another employee of Defendant, during Memorial Day Weekend of 2023.

11. Immediately after Plaintiff disclosed the identity of the employee to Defendant, she was subjected to disparate treatment and a hostile work environment, resulting in her constructive discharge on July 29, 2023.

12. On May 29, 2023, Plaintiff believes she was raped by coworker Connor Hastings, who, upon information and belief, is still employed by Defendant as a technician.

13. Mr. Hastings hosted a Memorial Day Party at his residence, which Plaintiff and several other employees of Defendant attended.

14. Sometime during or after the party, Mr. Hastings had sex with Plaintiff without her consent.

15. Plaintiff did not have the capacity to consent to sex because she blacked out from alcohol consumption.

16. When Plaintiff woke up on May 30, 2023, her vagina was bleeding and painful, and she had no memory of engaging in sexual activity to cause such physical trauma.

17. Mr. Hastings was the last individual she remembered being physically present with on May 30, 2023.

18. On June 2, 2023, Plaintiff confronted Mr. Hastings via text message.

19. The text messages between Plaintiff and Connor Hastings demonstrate that Mr. Hastings was coherent during the assault and that Plaintiff was not.

20. Mr. Hastings acknowledged via text message that he should not have done what he did to Plaintiff.

21. On June 3, 2023, Plaintiff reported the incident to Defendant but withheld Mr. Hastings' identity while she tried to process what occurred and how to handle it with the help of her therapist.

22. On July 13, 2023, Plaintiff reported the incident in its entirety to her supervisor, Joe Baucco.

23. Mr. Baucco immediately placed Plaintiff on unpaid leave, stating that she could not return to work until she got cleared by a doctor.

24. Notably, Defendant did not offer Plaintiff leave under the Family and Medical Leave Act ("FMLA").

25. Upon information and belief, Plaintiff should have been an eligible employee under the FMLA at the time Defendant placed her on unpaid, unprotected leave as a result of her disclosure of what she believed to be rape by a coworker.

26. Defendant retaliated against Plaintiff for making her report from the moment she identified Mr. Hastings as the perpetrator and reported his conduct to Defendant.

27. Defendant not only placed Plaintiff on unpaid leave, but it requested clearance from a physician for her to return to work although Plaintiff did not request time off or indicate that she needed time off for any condition or disability.

28. Defendant regarded Plaintiff as disabled because it assumed she could not work or that she needed time off for a medical condition after she reported being sexually assaulted by a coworker.

4

29. Defendant did not offer job-protected leave or paid leave, despite the fact that she was eligible for FMLA leave at the time she was placed on forced, unpaid leave.

30. Plaintiff did not request leave generally, and she explicitly stated that she could not afford to be off work.

31. Meanwhile, Mr. Hastings continued working as usual while Defendant allegedly conducted an investigation as a result of Plaintiff's reports.

32. Within a few weeks of Plaintiff's report regarding Mr. Hastings, Defendant concluded that it was a "he said, she said" situation and that "maybe this was just a matter of two drunk people having sex and regretting it."

33. Plaintiff informed management, including Mr. Baucco, Jason Anderson (General Manager) and Rhonda Johnson (Service Manager) that she had text messages between herself and Mr. Hastings, to show exactly what occurred from Mr. Hastings' perspective. The messages clearly reflect that he admits he should not have done it and that he would be upset if someone did what he did to his sister.

34. He even went so far as to make a joke about the situation, saying that she gave him "toothy bjs" because of her level of intoxication.

35. However, no member of management agreed to review the text messages. They all refused to look.

36. Had they looked, the situation could have been, and should have been, handled differently.

37. Defendant turned the other way and refused to investigate when Plaintiff raised concerns regarding sexual harassment and/or sexual assault, in direct violation of Title VII.

38. Plaintiff resigned employment on July 29, 2023, as a result of the discriminatory treatment and hostile work environment.

39. Plaintiff had tangible evidence, in the form of text messages, that arguably, her coworker raped her while she was unconscious, and Defendant refused to look at it, concluding that they could not determine what happened and who was telling the truth.

40. Mr. Hastings' text messages speak for themselves, and Defendant would have known if it would have reviewed them when Plaintiff begged them to do so.

41. Defendant's conduct in refusing to review Plaintiff's evidence is unconscionable. There is no legitimate reason for it and the duty under Title VII to investigate claims of sexual harassment and sexual assault require that Defendant review all available evidence, if it intends to claim it performed a reasonable investigation.

42. Plaintiff had no other choice but to resign, as no reasonable person should be expected to work alongside a person they believe raped them, nor should anyone have to work for an employer that refused to review any evidence related to the allegations.

43. As such, the materially adverse action (constructive discharge) is directly related to Plaintiff's reports of sexual assault by a coworker.

44. Defendant is liable to Plaintiff under the theory of Cat's Paw liability because it was negligent in failing to conduct an investigation into Plaintiff's claims by refusing to review her evidence, and the retaliatory intent behind its negligence achieved its desired end: Plaintiff's constructive discharge/termination from the company. *Vasquez v. Empress,* 835 F. 3d 267 at 274.

## COUNT I – Family and Medical Leave Act
### Interference

45. Plaintiff reasserts and reincorporates each and every allegation contained in the preceding paragraphs as if fully rewritten herein.

6

46. At all relevant times herein, Plaintiff was an eligible employee under the FMLA.

47. At all relevant times herein, Defendant was an eligible employer under the FMLA.

48. On June 3, 2023, Plaintiff reported to Defendant that she was sexually assaulted on Memorial Day Weekend, 2023.

49. On July 13, 2023, Plaintiff reported to Defendant that she was sexually assaulted by a coworker, an employee of Defendant.

50. Defendant immediately placed Plaintiff on unpaid, unprotected leave, stating that she could not return to work until she got cleared by a doctor.

51. Defendant's request for Plaintiff to obtain clearance to work from her physician demonstrates that Defendant perceived Plaintiff to have a serious medical condition or disability for which she needed time off work.

52. Defendant placed Plaintiff on leave and ordered her to obtain a doctor's clearance to return to work, thereby qualifying Plaintiff for FMLA leave for a serious medical condition for which Defendant required doctor's approval to continue working.

53. Time off work for evaluation by a doctor following a sexual assault qualified Plaintiff for leave under the FMLA.

54. Defendant failed to notify Plaintiff of her eligibility for FMLA for her serious medical condition(s).

55. Defendant denied Plaintiff benefits to which she was entitled by failing to offer her FMLA leave for her serious medical condition(s).

56. Defendant lacked good faith and/or reasonable grounds to believe it had not violated the FMLA by failing to notify Plaintiff of her eligibility.

57. Defendant's violations of the Family and Medical Leave Act entitles Plaintiff, pursuant to 29 U.S.C. § 2617(a), to monetary damages which include back pay and benefits, statutory liquidated damages, and attorneys' fees and costs of bringing this litigation, in an amount to be determined at trial.

## COUNT II – Title VII
### Retaliation

58. Plaintiff reasserts and reincorporates each and every allegation contained in the preceding paragraphs as if fully rewritten herein.

59. Plaintiff engaged in a protected activity by, *inter alia*, reporting that her coworker, employee of Defendant, Connor Hastings, sexually assaulted her.

60. Even though the assault occurred outside of work, Defendant was obligated to investigate the matter because it involved an alleged rape of one of its employees by another employee.

61. Defendant was aware that Plaintiff engaged in protected activity because Plaintiff reported the sexual assault to Defendant on or about June 3, 2023 and July 13, 2023, the date on which Plaintiff specifically reported Mr. Hastings to be the perpetrator of the sexual assault.

62. Plaintiff's engagement in protected activity was known by Defendant as she attended multiple meetings with managers to discuss the matter and report her continued discomfort in working with Mr. Hastings.

63. Once Plaintiff engaged in a protected activity, Defendant intentionally retaliated against her by immediately placing her on unpaid leave, refusing to remedy the situation, refusing to perform a reasonable investigation into Plaintiff's allegations, refusing to provide a reasonable and non-hostile work environment, terminating her, and otherwise discriminating against her in the terms, privileges, and conditions of employment.

64. Defendant took an action that was materially adverse to Plaintiff, as its conduct caused her constructive discharge on July 29, 2023.

65. In the circumstances of a constructive discharge, the matter alleged to be discriminatory includes the employee's resignation. *Green v. Brennan*, 136 S. Ct. 1769, 195 L. Ed. 2d 44, 2016 U.S. LEXIS 3484, 84 U.S.L.W. 4325.

66. Under the constructive discharge doctrine, an employee's reasonable decision to resign because of unendurable working conditions is assimilated to a formal discharge for remedial purposes. *See* 1 B. Lindemann & P. Grossman, Employment Discrimination Law 838-839 (3d ed. 1996) (hereinafter Lindemann & Grossman).

67. Plaintiff had tangible evidence, in the form of text messages with Mr. Hastings, to support her reports that her coworker raped her while she was unconscious, and Defendant refused to look at it, concluding they could not determine what happened and who was telling the truth.

68. Defendant failed to do its due diligence when it outright refused to look at the text messages at all.

69. Plaintiff had no other choice but to resign, as no reasonable person should be expected to work alongside their rapist for a company that refused to review any evidence of the rape itself.

70. Defendant is liable to Plaintiff under the theory of Cat's Paw liability because it was negligent in failing to conduct an investigation into her claims by refusing to review her evidence, and the retaliatory intent behind its negligence achieved its desired end: Plaintiff's constructive discharge/termination from the company. *Vasquez v. Empress,* 835 F. 3d 267 at 274.

71. *Vasquez* is persuasive authority because it is a Second Circuit case, but the basis for the decision is *Ellerth,* binding Supreme Court authority.

72. Defendant should have known of Mr. Hastings' discriminatory animus and motive to protect himself by lying about his rape of Plaintiff, and his status as a low-level employee with no supervisory or management authority cannot shield Defendant from answering for his conduct. *Id*.

73. Defendant is at fault because Mr. Hastings, its agent, committed an action based on discriminatory animus that was intended to cause, and did in fact cause, an adverse employment decision. *Id*.

74. Defendant gave more credit to Mr. Hastings' side of the story and believed him, while outright refusing to review Ms. Shea's evidence that Hastings had not only lied about his conduct, but also actually raped her.

75. Defendant was negligent by crediting Mr. Hastings narrative to the exclusion of all other evidence, and it declined to examine contrary evidence presented by Plaintiff.

76. Defendant's conduct resulted in Plaintiff's constructive discharge.

77. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer economic and non-economic damages, including, but not limited to, pain and suffering and the loss of salary, benefits, and other terms, privileges and conditions of employment for which Defendant is liable.

78. Defendant's conduct was willful, wanton, reckless, and/or malicious for which Defendant is liable for compensatory damages, punitive damages, and reasonable attorneys' fees and costs.

## COUNT III - Ohio Civil Rights Act
### Retaliation

79. Plaintiff reasserts and reincorporates each and every allegation contained in the preceding paragraphs as if fully rewritten herein.

10

80. Plaintiff engaged in a protected activity by, *inter alia*, reporting that her coworker Connor Hastings sexually assaulted her.

81. Defendant was aware that Plaintiff engaged in protected activity because Plaintiff reported the sexual assault to Defendant on or about June 3, 2023 and July 13, 2023.

82. Defendant was aware of Plaintiff's engagement in protected activity because Plaintiff attended multiple meetings with managers to discuss the matter and report her continued discomfort in working with Mr. Hastings.

83. Plaintiff reported the sexual assault to Defendant, and even though the assault occurred outside of work, Defendant was obligated to investigate the matter because it involved an alleged rape of one of its employees by another employee.

84. Once Plaintiff engaged in a protected activity, Defendant intentionally retaliated against her by immediately placing her on unpaid leave, refusing to remedy the situation, refusing to perform a reasonable investigation into Plaintiff's allegations, refusing to provide a reasonable and non-hostile work environment, terminating her, and otherwise discriminating against her in the terms, privileges, and conditions of employment.

85. Defendant took an action that was materially adverse to Plaintiff, as its conduct caused her constructive discharge on July 29, 2023.

86. Defendant is liable to Plaintiff under the theory of Cat's Paw liability because it was negligent in failing to conduct an investigation into her claims by refusing to review her evidence, resulting in her constructive discharge.

87. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer economic and non-economic damages, including, but not limited to, pain

and suffering and the loss of salary, benefits, and other terms, privileges and conditions of employment for which Defendant is are liable.

88. Defendant's conduct was willful, wanton, reckless, and/or malicious for which Defendant is liable for compensatory damages, punitive damages, and reasonable attorneys' fees and costs.

### COUNT IV – Ohio Civil Rights Act
### Perceived Disability Discrimination

89. Plaintiff reasserts and reincorporates all allegations in the paragraphs above as if fully rewritten herein.

90. At all times material herein, Plaintiff was regarded as disabled within the meaning of Section 4112.01(A)(13) of the Ohio Revised Code.

91. At all times material herein, Plaintiff was a qualified individual with a perceived disability within the meaning of R.C. §4112.01(A)(13) of the Ohio Revised Code.

92. Defendant regarded Plaintiff as disabled because it placed her on leave immediately after she reported to Defendant that she had been sexually assaulted by one of Defendant's employees.

93. Defendant regarded Plaintiff as disabled because it placed Plaintiff on unpaid leave and would not allow her to return to work unless she got a doctor's approval.

94. Defendant regarded Plaintiff as disabled because it required her to be evaluated by a doctor after learning she was sexually assaulted by a coworker.

95. Plaintiff had been working regularly as scheduled from the time she was assaulted to July 13, 2023, the date she reported Mr. Hastings' assault of her to Defendant.

96. Plaintiff did not request time off as a result of the assault.

97. Defendant unilaterally decided Plaintiff needed medical evaluation and approval

from a doctor in order to continue working for Defendant, thereby regarding her as disabled.

98. Defendant discriminated against Plaintiff because of her perceived disability by taking the following non-exhaustive list of actions: placing her on unpaid leave, retaliating against her, terminating her, and/or by otherwise discriminating against her in the terms, privileges and conditions of employment.

99. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer economic and non-economic damages, including but not limited to serious emotional distress and the loss of salary, benefits and other terms, privileges and conditions of employment for which Defendant is liable.

100. Defendant's conduct was willful, wanton, reckless and/or malicious for which Defendant is liable for compensatory damages, punitive damages and reasonable attorney's fees and costs.

### COUNT V – Americans with Disabilities Act
### Disability Discrimination

101. Plaintiff reasserts and reincorporates all allegations in the paragraphs above as if fully rewritten herein.

102. This claim is brought under federal law, pursuant to 42 U.S.C. § 12101, et seq., and as defined in 42 U.S.C. § 12101.

103. Plaintiff is an otherwise qualified individual with a perceived disability.

104. Defendant knew or had reason to know Plaintiff suffered from a disability, and/or regarded her as disabled.

105. Defendant regarded Plaintiff as disabled because it placed her on leave immediately after she reported to Defendant that she had been sexually assaulted by one of Defendant's employees.

13

106. Defendant unilaterally decided Plaintiff needed medical evaluation and approval from a doctor in order to continue working for Defendant, thereby regarding her as disabled.

107. Defendant discriminated against Plaintiff because of her perceived disability by taking the following non-exhaustive list of actions: placing her on unpaid leave, retaliating against her, terminating her, and/or by otherwise discriminating against her in the terms, privileges and conditions of employment.

108. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer economic and non-economic damages, including but not limited to serious emotional distress and the loss of salary, benefits and other terms, privileges and conditions of employment for which Defendant is liable.

109. Defendant's conduct was willful, wanton, reckless and/or malicious for which Defendant is liable for compensatory damages, punitive damages and reasonable attorney's fees and costs.

WHEREFORE, Plaintiff demands:

For all Counts, monetary damages including back pay and benefits, statutory liquidated damages, expert witness fees and attorneys' fees and costs, and front pay, compensatory damages and punitive damages in an amount to be determined at trial, but in any event not less than $75,000.00 and any and all other relief, which the Court deems just and appropriate.

Respectfully submitted,

/s/ *Rachel Sabo Friedmann, Esq.*
Rachel Sabo Friedmann (0089226)
*Rachel@thefriedmannfirm.com*
Jamie R. Bailey (0099789)
*Jamie@thefriedmannfirm.com*
**The Friedmann Firm LLC**

3740 Ridge Mill Dr.<br>
Hilliard, Ohio 43026<br>
Phone: (614) 639-6477<br>
Fax: (614) 737-9812

*Attorneys for Plaintiff*

## JURY DEMAND

Plaintiff hereby requests a jury of at least eight (8) persons.

/s/ *Rachel Sabo Friedmann, Esq.*
Rachel Sabo Friedmann (0089226)